### INTERNATIONAL TRADING COMPANY, Petitioner-Appellant,

v.

### COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

### No. 72-1475.

United States Court of Appeals, Seventh Circuit.

Argued April 10, 1973.

Decided July 24, 1973.

Stanley P. Gimbel, Roger C. Minahan, Milwaukee, Wis., for petitioner-appellant.

Scott P. Crampton, Asst. Atty. Gen., Jane M. Edmisten, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for respondent-appellee.

Before PELL and STEVENS, Circuit Judges, and CAMPBELL, Senior District Judge.*

PELL, Circuit Judge.

This appeal from a decision of the tax court while involving a narrow issue is not without broader significance because of underlying implications bearing on the scope of judicial review of statutes, particularly the Internal Revenue Code. The issue for decision is whether the corporate taxpayer was entitled to claim and carryover a loss resulting from the sale of improved real estate not claimed either to be used in trade or business or held for the production of income. The underlying issue is whether we should take the legislation as clearly written by the Congress or whether we should in effect read the statute on the basis of what Congress might have, possibly should have, but has not written into the legislation. We decline to engage in what amounts to judicial legislation.

Both the taxpayer, International Trading Company, and the property involved have previously been before this court. International Trading Co. v. Commissioner of Internal Revenue, 275 F.2d 578 (7th Cir. 1960), aff'g T.C. Memo 1958–104 (*International I*). In that case, it was held that International could not deduct maintenance expenses on resort property and was not entitled to a depreciation allowance on the same property under the 1939 precursory sections of the 1954 Code Sections 162(a) and 167(a).[1]

There is no indication in the record that the property between the years involved in *International I* (1951–3) and the year of the sale at a loss of some $300,000 (1957) changed from its status of being neither related to the carrying on of a trade or business nor to the production of income. In the tax court, International was attempting to establish the loss as being deductible under Code Section 165(a) and thereupon to carry-over the loss to subsequent years in which it had realized capital gains. The tax court, however, rather than granting the relief requested, carried over the business and income requirements of *International I* to the present proceedings primarily on the basis of an integrated approach to the Code. Six judges dissented. 57 T.C. 455 (1971).

The sections of the Code involved in *International I* and the section involved in the present matter have, however, striking and, in our opinion, dispositive differences. Insofar as the deduction of maintenance costs was concerned, this fell within a section of the Code concerned with "expenses." Even a casual reading of the various Revenue Acts re-

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

1. Formerly § 23(a)(1) and § 23(l).

veals a careful segregation between expense items and loss items. More significantly, the sections of the Code involved in *International I* applied across the board to taxpayers without differentiation between corporations and individuals.

Contrariwise, the loss-deduction section, 26 U.S.C. § 165, after stating the general rule allowing uncompensated losses then limits this deduction, *in the case of individuals only*, to business, profit, and casualty categories:

"(a) General rule.

There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

\*   \*   \*   \*   \*   \*

"(c) Limitation on losses of individuals.

In the case of an individual, the deduction under subsection (a) shall be limited to—

(1) losses incurred in a trade or business;

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. . . ."

The Commissioner cites us to several text writers[2] for the proposition, notwithstanding the lack of any business or profit qualification being imposed on corporate losses, that Section 165(a) and its predecessors only apply to losses incurred by corporations in their business or profit-making endeavors, since it was not contemplated that corporations would sustain other than business losses. As we read the cited authorities, the

most they say is that the Code does not impose the business-profit requirement on corporations as presumably corporate losses will have been incurred in a trade or business. This is scarcely a statement that corporate losses therefore *must* have a business-profit nexus to be deductible.

The fact that there was a differentiation of treatment, irrespective of its rationale, is illustrated not only by the authorities cited by the Commissioner but by other respected writers in the present field.

Thus, in 1 Mertens, Law of Federal Income Taxation, Code Commentary Sec. 165, at 196–199 (1969), we find:

"Sec. 165:1 General. The 1954 Code accomplished a wholesome structural change from prior law by assembling in a single section, 165, all of the various 1939 Code provisions relating to deductions for losses. The Finance Committee Report succinctly set forth the system of relationship between the prior and existing law provisions as follows:

'The general rule for losses of individuals (sec. 23(e)) and the rule for corporations (sec. 23(f)) become subsections (a) and (c). . . . No substantive change is made by this rearrangement. . . .'

\*   \*   \*   \*   \*   \*

"The losses of corporations are generally deductible without statutory limitation as to character, while the losses of noncorporate taxpayers are deductible only if they fall within the categories described hereafter.

"Sec. 165(c):1 Limitation on Losses of Individuals. In the case of an individual, a loss must come within one of three categories prescribed by the Code in order to be deductible. . . ."

---

2. Montgomery's Federal Taxes—Corporations and Partnerships (1948–1949), p. 638; Parker, Deductions and Credits (1967 ed.), pp. 76–77; Altman, Introduction to Federal Taxation (1939 Act) (3d ed. 1940), p. 84; Surrey and Warren,

Federal Income Taxation Cases and Materials (1960 ed.), p. 338; Klein, Federal Income Taxation (1929), par. 30, 48, p. 1042; Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders (3d ed.), par. 5.03–5.

■ It appears more than clear that Congress had set up separate requirements for loss deductions between corporations and individuals and that these separate rules had been carried over without substantive change into the 1954 Code in more convenient sectionalization.

Likewise, and notwithstanding knowledge of the tax court's decision in *International I*, 1 Rabkin & Johnson, Federal Income, Gift and Estate Taxation § 4.05, at 429–31, has this to say:

"§ 4.05.   DEDUCTION FOR LOSSES

Deduction is allowed for losses sustained during the taxable year. An individual may take the deduction, *however,* only if the loss meets the 'business' or 'profit' tests (§ 4.06), or if it represents a 'casualty'.

\*　　\*　　\*　　\*　　\*　　\*

" 'There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.' I.R.C. § 165(a) ; I.R.C. (1939) § 23(e).

\*　　\*　　\*　　\*　　\*　　\*

"In the case of an individual, the deduction is further restricted by the 'business' or 'profit' requirement . . . unless the loss qualifies as a 'casualty'. . . . .

\*　　\*　　\*　　\*　　\*　　\*

"(1) Comparison with Expense Deduction

It should be noted that the requirements for the deduction of losses differ from those for the deduction of expenses (cf. Ch. 3). For the corporation, the loss deduction is much less restricted. For the individual, the 'trade or business' definition is common to both deductions, but losses do not have to be 'ordinary and necessary'.

\*　　\*　　\*　　\*　　\*　　\*

"(2) Deduction by Corporation

Since a corporation is not restricted by the 'business' or 'profit' requirement, *the traditional rule* is that a deductible loss need not be incurred in a transaction 'pertinent to the conduct of the taxpayer's business'. Caldwell & Co. v. Com'r, 234 F(2d) 660, rev'g 24 TC 597. On the other hand, the corporation may not take a deduction for a payment which is essentially a gift or a dividend. Com'r v. Gilt Edge Textile Corp., 173 F(2d) 801, rev'g 9 TC 543.

"Despite the absence of a business or profit test, however, a sharply divided Tax Court has held that a corporation cannot take a loss deduction when it sells property not held for use in its business or for the production of income, but rather for the personal benefit of its stockholders. International Trading Co., 57 TC 455; Richard R. Riss, 57 TC 469." (Emphases added.)

That the "traditional rule" accepted the plain words of the statute in accordance with their plain meaning is further illustrated by the tax court itself. The *Riss* decision cited in the Rabkin & Johnson text was not the first time the tax court had considered the *Riss* case. On the first occasion, 56 T.C. 388, CCH Tax Ct.Rep.Dec. 30, 796 (1971), the court rejected the Government's contention that the loss on the sale of automobiles was not deductible stating:

"This is so, because, unlike the treatment accorded to individual taxpayers under section 165(c) of the Code, wherein losses are limited to three categories one of which is losses 'incurred in a trade or business,' no equivalent section exists for losses sought by corporations. The legislative history which follows amply bears out this point." CCH Tax Ct.Rep. at 2821. (Footnote omitted.)

After its decision in *International I*, the court modified the *Riss* case and denied the loss deduction.

■ Even if we accept *arguendo* the statement in the tax court's majority opinion in the present case that a "review of the statutory forebearers of section 165(a) leads to the conclusion that it was simply assumed that losses by

corporations would arise out of its trade or business," we find no basis therein for our undertaking to put words into the statute that, whatever the reasons may have been, Congress did not put there. Our task is to construe and apply, not to write, legislation.

As noted in the dissent of Judge Drennen, "when the provisions for deducting losses were rearranged in the 1954 Code it can hardly be argued that Congress was not aware of what it was doing in placing the limitation on the deductibility of losses by individuals only." 57 T.C. at 466–467.

Relying on United States v. Kirby, 7 Wall. 482, 74 U.S. 482, 486, 19 L.Ed. 278 (1868), the tax court majority opinion stated "we do not believe that strict construction requires a slavish unreasoning adherence to the literal reading of the statute." 57 T.C. at 461. We do not disagree with the suggestion in the century-old *Kirby* case that all laws should receive a sensible construction. On the other hand, we do not deem that we are engaged in "slavish adherence" by not inserting words which might in our judicial opinion seem to make a better balanced taxing statute. We also note in *Kirby* that the Court stated immediately ahead of the quotation appearing in the tax court decision: "But whether legislation of that character be constitutional or not, no intention to extend such exemption should be attributed to Congress *unless clearly manifested by its language.*" (Emphasis added.) 74 U.S. at 486.

The tax court majority opinion relied in part on the alleged fact that to allow the loss as a deduction is in effect to allow the depreciation for previous years which this court had denied in *International I.* To the extent that this is true, we find no license for judicial legislation in the fact that a taxpayer may achieve benefits under one section of the Code when what might seem to be the same benefits are denied under another section. This is not a new concept in tax law as any practitioner who has weaved

his way through the Code would agree. We have a somewhat analogous situation in the avoidance-evasion dichotomy, where the result reached may be roughly the same irrespective of the route utilized but the consequences of one path may be painful to the traveller.

*Kirby, supra,* reached an obviously correct result in holding that a defendant was not guilty of obstructing the passage of the mails by arresting a mail carrier upon a valid warrant arising out of a murder indictment. That Congress created a *per se* rule distinguishing corporate taxpayers from natural persons is not "so gross as to shock the general moral or common sense" that we feel compelled to find this one of those "rare and exceptional circumstances" justifying our ignoring the letter of the statute. Crooks v. Harrelson, 282 U.S. 55, 60, 51 S.Ct. 49, 75 L.Ed. 156 (1930). That differentiations might arise in the tax field was recognized during the same period of time that the *Kirby* sensible construction rule was pronounced. "[P]erfect uniformity of taxation as regards individuals or corporations, or the different classes of property subject to taxation, is a dream unrealized." State Railroad Tax Cases, 92 U.S. 575, 612, 23 L.Ed. 663 (1875).

The differential-of-treatment possibility was more recently recognized in Lewyt Corp. v. Commissioner of Internal Revenue, 349 U.S. 237, 240, 75 S.Ct. 736, 739, 99 L.Ed. 1029 (1955), in which the Court speaking through Mr. Justice Douglas stated:

"But the rule that general equitable considerations do not control the measure of deductions or tax benefits cuts both ways. It is as applicable to the Government as to the taxpayer. Congress may be strict or lavish in its allowance of deductions or tax benefits. The formula it writes may be arbitrary and harsh in its applications. But where the benefit claimed by the taxpayer is fairly within the statutory language and the construction sought is in harmony with the statute as an

organic whole, the benefits will not be withheld from the taxpayer though they represent an unexpected windfall."

While the Commissioner may find some arguable support in the reference to "harmony with the statute as an organic whole," the consolation is slight for as Judge Tannenwald pointed out in his dissenting opinion in the tax court:

"Section 165 is not the only section in part VI where distinctions are drawn between corporations and individuals. See sec. 165(i), 166(d), 166(f), 170(b)(1) and (2), 170(d)(1) and (2), 171(a)(3), 172(d)(5), and 176. See also sec. 163(d), added by the Tax Reform Act of 1969." 57 T. C. at 467 n. 1.

What the tax court did upon the basis of an integrated approach to the statute is aptly summarized in Note, International Trading Company: Limitations Imposed Upon Corporate Loss Deductibility Under Section 165(a), 33 U.Pitt L.Rev. 829, 835 (1972), where the author states: "With the interrelationship of 'trade or business use' and allowable expense or loss deductions found in other sections of the Code, it was not unreasonable for the Tax Court to exercise its judicial discretion and impose limitations upon corporate loss deductibility under section 165(a)." Our disagreement with the tax court decision is founded on the fact that we discern no room for the exercise of judicial discretion in the construction of Section 165(a).

The Commissioner contends that the deduction is proscribed by Section 262[3] of the Code and regulations thereunder. As we have already indicated, there is an "otherwise expressly provided" situation here plus the fact that we are in the present case concerned with losses not expenses, a clearly recognized distinction in the tax laws. To the extent that Section 1.262–1(b)(4) of Treasury Regula-

tions on Income Tax (1954 Code) (26 C.F.R.) fails to differentiate between individual and corporate taxpayers in dealing with losses, it has no viable application to the present case. It is a § 262 regulation, and, insofar as it purports to be concerned with losses, it is beyond the scope of § 262. Further, if it treats § 165 losses of corporations as not being allowable if arising from the sale of property held for personal, living, and family purposes it is in conflict with § 165(a). It is noteworthy that the Treasury Regulations adopted under Section 165 do not contain any reference to limitations on losses of corporations as they do, of course, for individuals.

The Commissioner, as did the tax court, also relies on two committee reports accompanying Section 274 of the Code (which was enacted in 1962, subsequent to the tax years here involved): S.Rep.No.1881, 87th Cong., 2d Sess., 1962–3 Cum.Bull. 707, 881; H.Rep.No. 1447, 87th Cong., 2d Sess., 1962–3 Cum. Bull. 405, 534. Comments of a subsequent Congress concerning an earlier enacted statute may be significant when the statute is ambiguous or vague, but here the language of the statute is neither ambiguous nor vague. We reach no decision as to whether a loss of the type here involved would be deductible by a corporation after the effective date of Section 274. To the extent it might be determined that this section would foreclose deductibility and to the extent any inference bearing on the present situation could be drawn therefrom, it would seem to be on the side of a recognition by Congress of the necessity of foreclosing deductibility, that which the Commissioner in effect is contending that we should do judicially.

Finally, the Commissioner contends that in any event the loss should not be deductible because the corporate entity should be disregarded. We find insufficient support in the record for this contention and therefore reject it.

---

**3.** "Except as otherwise expressly provided in this chapter, no deduction shall be al-

lowed for personal, living, or family expenses."

The correct rule of construction, and the one which we have adopted in the consideration of this appeal, is well stated by Judge Hastings in a recent decision of this court, Busse v. Commissioner of Internal Revenue, 479 F.2d 1147 (7th Cir. 1973). There the Commissioner sought to avoid the result apparently mandated by a construction of the statute by claiming that it would produce an absurdity "so gross as to shock the general or common sense." As Judge Hastings wrote,

"However much the statute, in operation, may offend the Commissioner's sense of symmetry and propriety, we cannot say that the results it causes are either absurd or unintended by Congress. Courts have no power (just as the Commissioner has no power in his capacity as an administrative official) 'to rewrite legislative enactments to give effect to' their 'ideas of policy and fitness or the desirability of symmetry in statutes.' United States v. Shirah, 4 Cir., 253 F.2d 798, 800 (1958). The powers of repeal and amendment are uniquely legislative in their nature." (at 1152) (Footnote omitted.)

See also Durkee Famous Foods, Inc. v. Harrison, 136 F.2d 303, 307 (7th Cir. 1943), rev'd on other grounds, 320 U.S. 718, 64 S.Ct. 367, 88 L.Ed. 422; Helvering v. Rebsamen Motors, Inc., 128 F.2d 584, 587–588 (8th Cir. 1942).

While this opinion was in the process of preparation, the United States Postal Service issued postage stamps commemorating The Boston Tea Party, reminding us of the days of the founding of this country when "[t]he cry, 'No taxation without representation,' was taken up in cities, towns, and country regions by artisans, mechanics, farmers, and housewives."[4] In the democratic form of government which eventually developed from resistance to nonself-imposed taxation, such as that characterized by the dumping of the tea into the Boston harbor, the power of imposing taxes was lodged where it should be, in the legislative branch of the government. Those to whom is entrusted the responsibility of collecting those taxes, even though government could not function without their collection, should nevertheless never be unmindful that the extent of the obligation is to collect only those taxes imposed by the representatives of the people elected for that purpose, the legislators. The attempt at collection should be effective, but it must also be evenhanded. Evenhandedness does not equate with an inconsistent policy of adhering to the plain meaning of words when that meaning is favorable to the collection but attempting to circumvent those words when they clearly do not provide the basis for the collection.

For the reasons herebefore set out, the decision of the tax court is reversed and the cause is remanded for further proceedings consistent with the foregoing opinion.

Reversed and remanded.

4. The Beards' Basic History of the United States, p. 97 (1944).