THOMAS A. AND AURORA A. DEPAOLIS, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1227–76.     Filed November 28, 1977.

Thomas A. DePaolis, pro se.
*Kenneth G. Gordon,* for the respondent.

### OPINION

DAWSON, *Judge:* Respondent determined a deficiency of $268.06 in petitioners' Federal income tax for the year 1972. The only issue presented for decision is whether petitioner Thomas A. DePaolis, an Air Force officer who retired on disability prior to reaching mandatory retirement age, is entitled to a retirement income credit of $268 for the year 1972 under the provisions of section 37, I.R.C. 1954,[1] for income received in excess of the claimed sick pay exclusion provided by section 105(d).

All of the facts are stipulated and are so found. The pertinent facts are summarized below.

---

[1] All statutory references herein are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.

Thomas A. DePaolis and Aurora A. DePaolis are husband and wife whose legal residence was in Oceanside, Calif., when they filed their petition in this case. They filed their joint Federal income tax return for the year 1972, and an amended return for that year, with the Western Service Center, Ogden, Utah.

Thomas A. DePaolis (petitioner) retired on physical disability, pursuant to 10 U.S.C. 1201, from the United States Air Force on September 1, 1967, with the rank of lieutenant colonel. He retired with a 10-percent disability rating. He then had 23 years, 9 months, and 28 days of active military service for the purposes of retirement.[2]

The mandatory retirement age for a lieutenant colonel in the Air Force is the earlier of 40 years[3] of service or 60 years of age. Petitioner was born on January 17, 1918, and at the time of his retirement on disability from the Air Force he was 49 years of age.

On his 1972 Federal income tax return the petitioner deducted $5,200 as "sick pay" under the provisions of section 105(d) of the Code.[4] A retirement income credit of $137 was also claimed on the return. On his amended Federal income tax return for 1972 the petitioner increased the claimed retirement income credit to $268.

In his statutory notice of deficiency dated January 8, 1976, respondent disallowed the claimed retirement income credit on the ground that petitioner's "earned income exceeds the maximum amount of retirement income."

Petitioner contends that he is entitled to the retirement income credit on all amounts received in excess of the sick pay exclusion. To the contrary, respondent's position is that when a former military officer retires on disability prior to reaching mandatory retirement age, he is not entitled to a retirement income credit on amounts received in excess of the sick pay exclusion.

---

[2]Although eligible, the petitioner did not retire under the longevity provisions of 10 U.S.C. 8911.

[3]See 10 U.S.C. 8924. The provisions of 10 U.S.C. 8916 under which a lieutenant colonel is required to retire on the 30th day after he completes 28 years of service are not applicable to the petitioner.

[4]Petitioner has not claimed an exclusion for 10 percent of his disability pay ($9,130 received from the Air Force) under sec. 104(a)(4) and sec. 1.104–1(e)(1), Income Tax Regs. He did exclude from income $874.72 received directly from the Veterans' Administration. He also claimed, and respondent allowed, the full "sick pay" exclusion under sec. 105(d).

The issue confronting us in this case has not been previously decided by any court.[5] Respondent relies on Rev. Rul. 69–12, 1969–1 C.B. 23, which ruled that the amount of a disability annuity received by a Federal employee under the Civil Service Retirement Act prior to normal retirement age that exceeds the sick pay exclusion under section 105(d) of the Code does not qualify as retirement income under section 37(c)(2). This was based on the retirement income credit which was in effect prior to the year 1977. The rationale is that the disability annuity payments received by a Federal employee who has retired prior to normal retirement age are treated as "wages or payments in lieu of wages" for the purposes of section 105(d), and do not qualify as "retirement income" within the meaning of section 37(c)(2).

Section 37[6] provides a credit against the tax imposed by

---

[5] In *Wilson v. United States*, 376 F.2d 280 (Ct. Cl. 1967), the defendant conceded the plaintiff was entitled to a retirement income credit by virtue of receiving disability retirement pay in 1959, 1960, and 1961 as a retired officer of the U.S. Navy.

[6] SEC. 37. RETIREMENT INCOME.

(a) GENERAL RULE.—In the case of an individual who has received earned income before the beginning of the taxable year, there shall be allowed as a credit against the tax imposed by this chapter for the taxable year an amount equal to 17 percent, in the case of a taxable year beginning in 1964, or 15 percent, in the case of a taxable year beginning after December 31, 1964, of the amount received by such individual as retirement income (as defined in subsection (c) and as limited by subsection (d)); but this credit shall not exceed such tax reduced by the credits allowable under section 32(2) (relating to tax withheld at source on taxfree covenant bonds), section 33 (relating to foreign tax credit), and section 35 (relating to partially tax-exempt interest).

(b) INDIVIDUAL WHO HAS RECEIVED EARNED INCOME.—For purposes of subsection (a), an individual shall be considered to have received earned income if he has received, in each of any 10 calendar years before the taxable year, earned income (as defined in subsection (g)) in excess of $600. A widow or widower whose spouse had received such earned income shall be considered to have received earned income.

(c) RETIREMENT INCOME.—For purposes of subsection (a), the term "retirement income" means—

*     *     *     *     *     *     *

(2) in the case of an individual who has not attained the age of 65 before the close of the taxable year, income from pensions and annuities under a public retirement system (as defined in subsection (f)),

to the extent included in gross income without reference to this section, but only to the extent such income does not represent compensation for personal services rendered during the taxable year.

(d) LIMITATION ON RETIREMENT INCOME.—For purposes of subsection (a), the amount of retirement income shall not exceed $1.524 less—

(1) in the case of any individual, any amount received by the individual as a pension or annuity—
(A) under title II of the Social Security Act,
(B) under the Railroad Retirement Acts of 1935 or 1937, or
(C) otherwise excluded from gross income, and

*     *     *     *     *     *     *

(e) RULE FOR APPLICATION OF SUBSECTION (d)(1).—Subsection (d)(1) shall not apply to any amount excluded from gross income under section 72 (relating to annuities), 101 (relating to life insurance proceeds), 104 (relating to compensation for injuries or sickness), 105 (relating to amounts received under accident and health plans), 402 (relating to taxability of beneficiary of employees' trust), or 403

chapter 1 of the Internal Revenue Code of 1954 in the case of an individual who receives in the taxable year retirement income as defined in section 37(c) and who meets the eligibility requirements of section 37(b).

Section 37(c)(2) defines "retirement income" in the case of an individual who has not attained the age of 65 before the close of the taxable year as meaning income from pensions and annuities to the extent included in gross income, but only to the extent such income does not represent compensation for personal services rendered during the taxable year.

For taxable years beginning after December 31, 1954, amounts received from the retirement system established by the United States for members of the Armed Forces of the United States are included within the definition for retirement income. Sec. 1.37–3(a)(3), Income Tax Regs. The legislative history relating to this change made by Pub. L. 299 is set forth in S. Rept. 1142, 84th Cong., 1st Sess. 1(1955), as follows:

> Your committee's bill would remove the discrimination existing under present law against members of the Armed Forces by allowing them to claim the retirement income tax credit *under the same circumstances and to the same extent as retired civil servants and others under a public retirement system.* * * * [Emphasis supplied.]

Thus, to carry out the intent of Congress, section 37 should be applied to members of the Armed Forces who retire on disability prior to mandatory retirement age in same manner as it applies to Federal civil servants.

Although the literal language of section 37(c)(2) (now section 37(e)(4)(B)) would seem to favor the petitioner, we think the words "pensions and annuities" as used in section 37 refer only to those whose taxability is determined under section 72.

Disability annuity payments received by a Federal employee before normal retirement age under the Civil Service Retire-

---

(relating to taxation of employee annuities).

(f) PUBLIC RETIREMENT SYSTEM DEFINED.—For purposes of subsection (c)(2), the term "public retirement system" means a pension, annuity, retirement, or similar fund or system established by the United States, a State, a Territory, a possession of the United States, any political subdivision of any of the foregoing, or the District of Columbia.

(g) EARNED INCOME DEFINED.—For purposes of subsections (b) and (d)(2), the term "earned income" has the meaning assigned to such term in section 911(b), except that such term does not include any amount received as a pension or annuity.

ment Act are treated as "wages or payments in lieu of wages" for the purposes of section 105(d).[7] Section 1.105–4(a)(3)(i)(A), Income Tax Regs., provides, in part, that if a plan provides that an employee, who is absent from work on account of a personal injury or sickness, will receive a disability pension or annuity as long as he is disabled, section 105(d) is applicable to any payments that such an employee receives under the plan before he reaches normal retirement age.

Section 1.72–15(b), Income Tax Regs., provides the general rule that section 72 of the Code does not apply to any amount received as an accident or health benefit, and the *tax treatment* of any such amount shall be determined under sections 104 and 105.

All of the disability annuity ($9,130) received by the petitioner is considered to be "wages or payments in lieu of wages" when received prior to his mandatory retirement age. Therefore, it is governed by the provisions of section 105(d). For tax purposes the disability annuity cannot be fractured into part "payments in lieu of wages" and part "retirement income." There must be consistent treatment. The provisions of section 72 regarding the classification of amounts received as income from pensions and annuities do not become effective until he reaches the mandatory retirement age.

Usually when a member of the Armed Forces reaches retirement age, what he receives in practical effect is a pension or an annuity. This petitioner would have received "retired pay" if he had chosen to retire for length of service under 10 U.S.C. 8911. But he did not do so, and he did not receive retired pay. Instead, as a consequence of his partial disability, he received "wage continuation" benefits to compensate him for being unable to work. These "payments in lieu of wages" qualified him

---

[7]SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.

(a) AMOUNTS ATTRIBUTABLE TO EMPLOYER CONTRIBUTIONS.—Except as otherwise provided in this section, amounts received by an employee through accident or health insurance for personal injuries or sickness shall be included in gross income to the extent such amounts (1) are attributable to contributions by the employer which were not includible in the gross income of the employee, or (2) are paid by the employer.

\*     \*     \*     \*     \*     \*     \*

(d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. \* \* \*

for the "sick pay" exclusion until the time he would ordinarily have retired. In our judgment we doubt whether Congress ever intended to permit a double tax benefit by allowing a taxpayer who receives wage continuation benefits to receive the added benefit of the credit for receiving retired pay. Such a result would be incongruous with the interworkings of sections 37, 72, and 105(d). The mere incantation of the words of section 37 does not provide an abracadabra solution to the issue presented.

Accordingly, we hold that the amount the petitioner received in excess of the sick pay exclusion provided by section 105(d) does not qualify as retirement income within the meaning of section 37(c)(2).

*Decision will be entered for the respondent.*

Reviewed by the Court.

FAY, *J.*, dissenting: I respectfully disagree with the majority because I believe the path it follows toward its conclusion represents judicial legislation under the guise of statutory interpretation.

Petitioner retired from the United States Air Force at the age of 49 due to a physical disability. He retired with a 10-percent disability rating and was awarded a disability pension of $9,130. Because of his 10-percent disability rating, petitioner was entitled under section 104(a)(4) to exclude 10 percent of this amount from his income.[1] In addition, a portion of the disability pension received by petitioner which exceeded his section 104(a)(4) exclusion qualified for the section 105(d) "sick pay" exclusion until he reached his normal retirement age. Sec. 1.105–4(a)(3)(i)(A), Income Tax Regs. In accordance with section 105(d) and the regulations thereunder, petitioner claimed the maximum exclusion allowable of $5,200 in 1972. The remaining portion of the $9,130 disability payment received by petitioner was fully taxable. This amount was used by petitioner in computing his retirement income credit under section 37.

The fundamental issue in this case is whether the amounts

---

[1]See n. 4 of the majority opinion.

received by petitioner in excess of his sections 104(a)(4) and 105(d) exclusions qualify as "retirement income" as that term is used in section 37.

For individuals under the age of 65, section 37(c)(2) defines "retirement income" to include "income from pensions and annuities under a public retirement system."[2] Unfortunately, the precise meaning of the words "pensions and annuities" is not defined by the statute or respondent's regulations. The majority limits its meaning to include only those pensions and annuities "whose taxability is determined under section 72." Because the payments received by petitioner are governed by sections 104 and 105 (and not by section 72), they are, according to the majority, outside the purview of the term "pensions and annuities" in section 37. I disagree.[3]

First of all, the most troublesome aspect of this decision, and that which becomes readily apparent upon a reading of the opinion, is that the majority cites no support for its position in the pertinent Code sections, regulations, or legislative history. I believe the result herein is simply a product of the majority's concern that to hold for the taxpayer in this case would permit him to enjoy multiple tax benefits. Specifically, it states: "In our judgment we doubt whether Congress ever intended to permit a double tax benefit by allowing a taxpayer who receives wage continuation benefits to receive the added benefit of the credit for receiving retired pay."

In reaching the result it desires, the majority finds it necessary to narrowly interpret the plain words of the statute, viz., it restricts "pensions and annuities" to include only those "pensions and annuities whose taxability is governed by section 72." I believe this is nothing more than a blatant and unwarranted example of judicial legislation. While the taxpayer in the instant case would enjoy multiple benefits under the applicable Code sections, this fact does not suddenly confer upon this Court the power to rewrite the statute. As noted by the Supreme Court in *Hanover Bank v. Commissioner*, 369 U.S. 672, 687–688 (1962):

we are not at liberty, notwithstanding the apparent tax-saving windfall

---

[2]"Public retirement system" includes payments from a fund established by the United States for members of the Armed Forces. See sec. 1.37–3(a)(3), Income Tax Regs.

[3]It is unfortunate that the taxpayer herein appeared pro se because the only assistance the majority had in deciding this case was a Government brief which was not particularly illuminating.

bestowed upon taxpayers, to add to or alter the words employed to effect a purpose which does not appear on the face of the statute. * * * the Government * * * urges this Court to do what the legislative branch of the Government failed to do or elected not to do. This, of course, is not within our province. [Fn. ref. omitted.]

In *International Trading Co. v. Commissioner*, 484 F.2d 707, 711 (7th Cir. 1973), revg. 57 T.C. 455 (1971), the court stated:

we find no basis therein for our undertaking to put words into the statute that, whatever the reasons may have been, Congress did not put there. Our task is to construe and apply, not to write, legislation.

We would do well to heed these words. The Code sections in this case are complicated enough without our convoluted interpretation of them overlaying the existing confusion.

Furthermore, not only is its interpretation of the statute unduly restrictive, but also I believe the myopic approach taken by the majority overlooks the effect of several statutory changes made by Congress in the Tax Reform Act of 1976. As previously noted, the majority appears troubled at the prospect of allowing petitioner multiple tax benefits under various Code sections with respect to the same disability pension. Presumably, by denying petitioner the right to claim a retirement income credit, the majority believes it has reached an equitable result. Unfortunately, by failing to give full consideration to the 1976 amendments affecting sections 104(a)(4) and 105(d), the majority has created a situation where the result in similar future cases will invariably be unjust. Specifically, both sections 104 and 105 were amended so that if the same facts occurred today a similarly situated taxpayer would receive no disability exclusion under section 104(a)(4)[4] and would not be allowed a section 105(d) exclusion because he is not "totally and permanently" disabled. See H. Rept. 94–658, 1976–3 C.B. (Vol. 2) 695, 844. These changes would make the full $9,130 taxable, and under the majority's opinion, petitioner, until he reaches normal retirement age, would not be eligible to claim the credit under section 37. In other words, the means employed by the majority to deal with what it perceives to be an inequitable situation with respect to the petitioner in the instant case, will operate to penalize future taxpayers who themselves will have never

[4] Sec. 104(b), added in 1976, makes sec. 104(a)(4) inapplicable to an individual enlisting after Sept. 24, 1975, unless his particular disability is combat related.

received any multiple benefits under the statute. Certainly I would not deny that the concepts of equity and fairness oftentimes serve as the sole basis for a decision; however, I believe any justification for the use of these concepts to reach the result herein has certainly been swept away by changes Congress has made in the statute.[5]

TANNENWALD, *J.*, agrees with this dissenting opinion.

HALL, *J.*, dissenting: I respectfully dissent. Section 37(c)(2) provides that "retirement income" (with respect to which the retirement income credit is available) includes, "in the case of an individual who has not attained the age of 65 before the close of the taxable year, income from pensions and annuities under a public retirement system (as defined in subsection (f))." During the year in issue, 1972, petitioner was under 65 and received disability annuity payments of $9,130 from the retirement system established by Congress for members of the Armed Forces, pursuant to the provisions of 10 U.S.C. 1201. The only question is whether, within the meaning of section 37(c)(2), these payments constituted "pensions or annuities." In holding that they do not, the majority relies on the fact that Congress has chosen to provide an exclusion under section 105 for the first $5,200 of such payments, and concludes that payments subject to the benefits of such an exclusion must not be the kind of "pensions and annuities" Congress had in mind. Absent section 105, the majority would apparently have no difficulty in finding that petitioner's pension was a pension.

The trouble with the majority's opinion is the entire absence of statutory support for it. Clearly enough, that which petitioner received was a pension from a public retirement system as defined in the statute. The majority divines a congressional intent to the contrary, but the divination's major premise is rooted not in the statute or even a regulation, but rather in an

---

[5]One significant ramification of our opinion is to elevate to a level of importance the label which is placed on a pension. For example, suppose an individual, A, who is under the age of 65, retires from the Armed Forces and is awarded a "disability" pension which, because of the new secs. 104(b) and 105(d), is fully taxable. Under our decision A would not be eligible for the sec. 37 credit. However, if A had instead received a fully taxable "regular" pension he would be entitled to a sec. 37 credit by virtue of new sec. 37(e) (old sec. 37(c)). Viewing the realities of the situation, I can see no justification for the difference in treatment.

unsupported revenue ruling, Rev. Rul. 69–12, 1969–1 C.B. 23. This ruling deals with civilian employees and reads into section 37(c)(2), as previously in effect, a requirement which is simply not in the statute. The ruling says, in effect, that for civilian employees a pension is not a pension if it is treated for purposes of section 105(d) as "wages or payments in lieu of wages." The difficulty with the ruling is that section 37(c)(2) contains no exception for such amounts. The majority then finds a minor premise in legislative history which says that Congress intended a parity of civilian and military treatment, and concludes that only pensions taxed under section 72 are really "pensions."

The error in the majority's logic is the faulty major premise. A revenue ruling has no independent force and can be only as persuasive as the reasoning and authorities on which it relies. *Stubbs, Overbeck & Associates v. United States*, 445 F.2d 1142, 1146–1147 (5th Cir. 1971); *Estate of Lang v. Commissioner*, 64 T.C. 404, 406–407 (1975), on appeal (9th Cir., Jan. 6, 1976, by respondent, and Jan. 19, 1976, by petitioner). To treat a ruling as more than the position of one of the litigants before us is to permit a man to be judge in his own cause—a principle abhorrent to law since the days of Hammurabi. Rev. Rul. 69–12 is supported neither by reason nor authority. It represents merely respondent's effort to eliminate what respondent perceives as a statutory double benefit, not by persuading Congress to repeal it, but by the attempted shortcut of administratively decreeing a new requirement not contained in the statute. Nothing in the majority opinion supplies the missing statutory language supporting the result for which respondent contends. It may or may not be that Congress would have preferred to limit the benefits of section 37 to those not also benefiting from section 105(d), had the matter been brought to its attention. We see no a priori reason to presume that it would. However, the desirability of such a limitation is a policy matter concerning which we cannot express a view. We should deal with the statute as we find it.

Furthermore, careful reading of the statute discloses not only that Congress failed to exclude pre–65 disability pensions from the statutory category of "pension," but even that Congress affirmatively intended to *include* them. Section 37(d)(1) limits retirement income to $1,524 less "any amount received by the individual as a *pension or annuity* * * * otherwise excluded

from gross income." Section 37(e) provides, however, that subsection (d)(1) does not apply to amounts excluded from gross income under section 105. The implication from the interplay of these sections is that benefits received under section 105 may be viewed, under section 37(d)(1), as a *pension or annuity* which reduces the amount of retirement income. Benefits received under section 105 may thus fall within the broad rubric of "pensions and annuities," undercutting the majority's limited interpretation of that phrase.

An additional indication that section 105 benefits are eligible for the credit can be reached through a negative implication. When a person retired on disability pay reaches the age 65, he is deemed no longer to be receiving "sick pay" but rather "retirement pay," so that the amounts received are not considered to be under section 105 (and are not entitled to an exclusion). Accordingly, an individual could only receive moneys under section 105 which would be excluded from gross income (and therefore create a question whether such a pension or annuity decreases the amount of retirement income) if that individual is under 65. By implication, amounts received by an individual under age 65 are a pension or annuity—otherwise, the reference to section 105 in section 37(e) is superfluous.

Additional support for the conclusion that the term "pensions and annuities" is broader than the majority concludes can be found in section 37(c). Section 37(c) defines "retirement income" for which the credit authorized under section 37(a) is allowable. Retirement income is defined separately for persons over 65 and for persons under 65. "Retirement income" after 65 means (1) "pensions and annuities," (2) interest, (3) rents, (4) dividends, and (5) bonds. Before age 65, retirement income is "pensions and annuities under a public retirement system (as defined in subsection (f))." For both age groups the same phrase, "pensions and annuities," is used. For persons over 65 this phrase must encompass all terms of retirement benefits (other than the specified rents, etc.), including disability benefits. The implication to be drawn is that the phrase "pensions and annuities" should be broadly construed. Similarly, "pensions and annuities" should be broadly construed under section 37(c)(2).

A pension is a pension. Should Congress desire to narrow that category it need but so provide. It is not for us to do so.

294

Drennen, Fay, Tannenwald, and Wilbur, *JJ.*, agree with this dissenting opinion.