WILLIAM I. WOODFORD AND MADGE L. WOODFORD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8588–76.    Filed March 12, 1979.

---

William I. Woodford, pro se.
*Charles N. Woodward*, for the respondent.

FEATHERSTON, *Judge:* Respondent determined a deficiency in the amount of $1,270.60 in petitioners' Federal income tax for 1975. The issues for decision are:

(1) Whether petitioners, who excluded $5,200 from their gross income for 1975 as sick pay under section 105(d),[1] are entitled under section 72(d)(1) also to exclude from their gross income an additional $5,679 as a recovery of their contributions to the Civil Service Retirement Fund.

(2) Whether petitioners are entitled to a retirement income credit under section 37 in the amount of $228.60 for 1975.

### FINDINGS OF FACT

Petitioners William I. Woodford and Madge L. Woodford, husband and wife, were legal residents of Little Rock, Ark., when they filed their petition. They filed a timely joint Federal income tax return for 1975 with the District Director, Internal Revenue Service Center, Austin, Tex. Both petitioners were 65 years of age or over at the end of 1975.

On March 1, 1966, petitioner William I. Woodford (hereinafter petitioner) retired from the Army of the United States. On December 31, 1973, at the age of 67, he retired from a position in the Internal Revenue Service after approximately 29 years of qualifying employment under the Federal civil service system.

Initially, petitioner's retirement under the civil service system was on a nondisability basis. On November 4, 1974, however, pursuant to petitioner's application, the Bureau of Retirement, Insurance, and Occupational Health (the bureau) of the United States Civil Service Commission reclassified petitioner's retirement status to "disability" retirement. The letter from the bureau notifying petitioner of this reclassification reads in pertinent part as follows:

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.

This is in reference to your application for retirement under the disability provisions of the Civil Service Retirement law.

Our Medical Division has approved your application on the basis that you were totally disabled for useful and efficient service in the position you last occupied. Therefore, a change in the type of your award to "disability" has been approved.

This action does not change the amount of your monthly annuity.

Your "normal retirement date" for tax purposes is 2/7/76.

Thereafter, in 1974 and 1975, petitioner received disability retirement benefits pursuant to the provisions of 5 U.S.C. secs. 8337 and 8339. During 1975, petitioner received 12 monthly payments totaling $10,879.

On February 7, 1976, petitioner became 70 years of age.

At the time of his retirement in 1973, petitioner had contributed $12,284 into the Civil Service Annuity Fund (the fund). For purposes of this case, the parties have stipulated that petitioner had unrecovered contributions to the fund in the amount of $8,643 at the beginning of 1975.

In addition to the disability retirement payments, petitioner in 1975 received Army retirement payments totaling $5,898.48. Also, petitioners received in that year taxable dividends and interest income of $677.86 and $1,841.83, respectively.

Petitioner had received earned income in excess of $600 in each year for more than 10 years prior to 1975, and he did not receive payments of either Social Security or railroad retirement benefits during 1975.

Of the $10,879 disability retirement payments which petitioner received in 1975, petitioners, under section 105(d), excluded from their gross income for that year the sum of $5,200 as sick pay. In addition, petitioners, under section 72(d)(1) excluded the sum of $5,679 as a recovery of petitioner's contributions to the Civil Service Retirement Fund. Petitioners also claimed a retirement income credit in the amount of $228.60.

In the notice of deficiency, respondent determined that petitioners had gross income in the amount of the $5,679 excluded under section 72(d)(1) and that petitioners did not qualify for a retirement income credit.

OPINION

1. *Exclusion Issue*

In 1975 petitioner received disability retirement benefits un-

der the Civil Service Retirement System totaling $10,879. At that time, he had not yet reached the mandatory or normal retirement age of 70 years. Both parties agree that petitioner was entitled to exclude from his gross income $5,200 of the benefit payments as a sick pay exclusion under section 105(d).[2] The issue is whether petitioner is entitled also in the same year under section 72(d)(1) to exclude $5,679, the remainder of his disability retirement payments, as a recovery of contributions to the Civil Service Retirement Fund. We hold he is not.

Section 1.72–15(b), Income Tax Regs., prescribes a general rule that section 72, dealing with annuities, does not apply to any amount received as an accident or health benefit, within the meaning of section 105(a), and that the tax treatment of any such amount shall be determined under sections 104 and 105. Section 105(a) prescribes the general rule that amounts received by an employee through health or accident insurance for personal injuries or sickness shall be included in gross income to the extent such amounts are paid by the employer. Under section 105(d) in the form in which it was applicable in 1975, the year in controversy, disability retirement payments received by a Federal employee retired prior to his normal retirement age were treated as "wages or payments in lieu of wages" for a period during which the employee was absent from work on account of personal injuries or sickness. Such payments to the extent of $100 per week were excluded from the employee's gross income. See *DePaolis v. Commissioner,* 69 T.C. 283, 286–287 (1977); sec. 1.105–4(a), Income Tax Regs. Disability retirement payments in excess of $100 per week, unless excluded under some other provision, are thus includable in gross income under the general rule prescribed by section 105(a).

To exclude the payments totaling $5,679 in excess of $100 per week, petitioner relies upon section 72(d)(1).[3] That section per-

---

[2]SEC. 105. AMOUNTS RECEIVED UNDER ACCIDENT AND HEALTH PLANS.

(d) WAGE CONTINUATION PLANS.—Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; but this subsection shall not apply to the extent that such amounts exceed a weekly rate of $100. * * *

[3]SEC. 72. ANNUITIES; CERTAIN PROCEEDS OF ENDOWMENT AND LIFE INSURANCE CONTRACTS.

(d) EMPLOYEES' ANNUITIES.—

(1) EMPLOYEE'S CONTRIBUTIONS RECOVERABLE IN 3 YEARS.—Where—

(A) part of the consideration for an annuity, endowment, or life insurance contract is contributed by the employer, and

mits an employee receiving an annuity paid for in part by his employer to exclude from his gross income the annuity payments he receives until the amounts so excluded are equal to the consideration contributed by the employee for the contract. One condition imposed by the section is that the receipts in the first 3 years of the annuity must equal or exceed the contributions made by the employee.

We agree with respondent that petitioners are not entitled to split the payments they received and in the same year treat part of their civil service retirement annuity under section 105(d) as sick pay and to treat the remainder under section 72(d)(1) as a recovery of contributions to the Civil Service Retirement Fund. *DePaolis v. Commissioner, supra* at 287. This conclusion is dictated by section 1.72–15(d), Income Tax Regs., as follows:

(d) *Accident or health benefits attributable to employer contributions.* Any amounts received as accident or health benefits and not attributable to contributions of the employee are includible in gross income except to the extent that such amounts are excludable from gross income under section 105(b), (c), or (d) and the regulations thereunder. Thus, such amounts may be excludable under section 105(d) as payments under a wage continuation plan. However, if such payments, when added to other such payments attributable to employer contributions, exceed the limitations of section 105(d), then *the excess is includible in gross income under section 105(a). Such excess is not excludable under section 72.* See, however, paragraph (i) of this section, for special rules for taxable years ending before January 27, 1975, relating to certain accident or health benefits which were treated as distributions to which section 72 applied.[4] [Emphasis added.]

---

(B) during the 3-year period beginning on the date on which an amount is first received under the contract as an annuity, the aggregate amount receivable by the employee under the terms of the contract is equal to or greater than the consideration for the contract contributed by the employee,

then all amounts received as an annuity under the contract shall be excluded from gross income until there has been so excluded an amount equal to the consideration for the contract contributed by the employee. Thereafter all amounts so received under the contract shall be included in gross income.

[4]This regulation refers to benefits "not attributable to contributions" by an employee. Covered employees, of course, contribute to the Civil Service Retirement Fund, but this point is dealt with expressly in sec. 1.72–15(c)(2), Income Tax Regs., as follows:

"if the plan does not expressly provide that the accident or health benefits are to be provided with employee contributions and the portion of the employee contributions to be used for such purpose, it will be presumed that none of the employee contributions is used to provide such benefits. Thus, in the case of a contributory pension plan, it will be presumed that the disability pension plan is provided by employer contributions, unless the plan expressly provides otherwise * * * "

The Civil Service Retirement Plan does not provide that accident or health benefits are to be provided with employee contributions. It is "presumed," therefore, that such benefits are provided by employer contributions.

In a case involving 1973, a year ended before January 27, 1975, to which the special rules referred to in the last sentence of the foregoing regulation[5] were applicable *(Brownholtz v. Commissioner,* 71 T.C. 332 (1978)), this Court reached the same result and explained the relationship of section 105(a) to section 72 as follows *(Brownholtz v. Commissioner, supra* at 337):

Section 105(a) is intended to tax an employee on wage continuation benefits provided by untaxed employer contributions when received during a period of absence from work due to sickness, subject to the limited sick pay exclusion exception. See Conf. Rept. 2543, 83d Cong., 2d Sess. 24–25 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 183–184 (1954). If section 72 were to apply in a case such as this, the very amounts that section 105(a) seeks to tax could be treated as recovery of cost, and thus escape taxation. To resolve this conflict between sections 72 and 105, it seems reasonable to construe section 105, specifically directed to the taxation of sick pay, as superseding the general provisions of section 72, which do not expressly address that problem. [Fn. ref. omitted.]

Although petitioners are not entitled in 1975 to the cost recovery exclusion provided by section 72(d), they will be entitled to such exclusion in due time. On February 7, 1976, petitioner reached the then-mandatory or normal retirement age of 70 years, and thereafter his right to exclude his contributions to the Civil Service Retirement Fund will no longer be limited by section 105(a) and (d). *DePaolis v. Commissioner, supra* at 287. In years subsequent to his attaining the age of 70, he will be able to recover tax free the remaining amount he contributed to the fund.

## 2. *Retirement Income Credit Issue*

For years beginning after December 31, 1964, section 37, subject to certain limitations, allows an individual who had earned income in excess of $600 in any 10 prior calendar years a credit against his tax liability equal to 15 percent of his retirement income. One limitation is prescribed by section 37(d)(2)(B) as follows:

---

[5]The special rule applied in *Brownholtz v. Commissioner,* 71 T.C. 332 (1978), is set forth in sec. 1.72–15(i), Income Tax Regs. That regulation allowed a taxpayer to exclude from income *the greater of* the amount actually excluded as a recovery of his contribution to the retirement plan *or* the maximum permissible sick pay exclusion. By its terms, this special rule applies only to taxable years ended before Jan. 27, 1975, and the taxable year here in controversy ended after that date. If this special rule were applied here it would allow petitioners to exclude $5,679 under sec. 72 rather than the $5,200 they have been allowed to exclude under sec. 105(d).

SEC. 37. RETIREMENT INCOME.

(d) LIMITATION ON RETIREMENT INCOME.—For purposes of subsection (a), the amount of retirement income shall not exceed $1,524 less—

\*    \*    \*    \*    \*    \*    \*

(2) in the case of any individual who has not attained age 72 before the close of the taxable year—

(B) if such individual has attained age 62 before the close of the taxable year, the sum of (i) one half the amount of earned income received by such individual in the taxable year in excess of $1,200 but not in excess of $1,700, and (ii) the amount of earned income so received in excess of $1,700.

Respondent maintains that petitioner's 1975 disability retirement payments of $5,679 in excess of the excluded amounts were "earned income" within the meaning of section 37(d)(2)(B) and, therefore, the retirement income credit of $228.60 which petitioners claimed on their 1975 income tax return is not allowable. Petitioners argue that such payments were not earned income and that, therefore, the section 37(d)(2)(B) limitation does not bar the coveted credit. We agree with respondent.

Section 37(g), in the form applicable to the year here in controversy, provides that "the term 'earned income' has the meaning assigned to such term in section 911(b), except that such term does not include any amount received as a pension or annuity." Section 911(b) defines "earned income" to include "wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered." The decisive issue is whether the payments petitioner received in 1975, disability retirement benefits under the civil service laws, in excess of the excluded amounts, were a "pension or annuity" or were "compensation for personal services" within the meaning of this definition.

In resolving the dispute as to issue 1, we have concluded that the disability payments of $5,679 which petitioner received in excess of the excluded $5,200 were "payments in lieu of wages" for a period during which he was absent from work on account of personal injuries or sickness. Such payments are taxable to petitioner under section 105(a). As such they constitute earned income within the meaning of section 37(d)(2)(B). Thus, in *De-Paolis v. Commissioner, supra,* this Court held that amounts of disability retirement payments received by an Air Force officer prior to his mandatory retirement age were not retirement income but were payments in lieu of wages, taxable under section

105(a), to compensate him during a period when he was unable to work. The Court said (69 T.C. at 287):

Section 1.72–15(b), Income Tax Regs., provides the general rule that section 72 of the Code does not apply to any amount received as an accident or health benefit, and the *tax treatment* of any such amount shall be determined under sections 104 and 105.

All of the disability annuity ($9,130) received by the petitioner is considered to be "wages or payments in lieu of wages" when received prior to his mandatory retirement age. Therefore, it is governed by the provisions of section 105(d). For tax purposes the disability annuity cannot be fractured into part "payments in lieu of wages" and part "retirement income." There must be consistent treatment. * * *

We think the *DePaolis* holding controls this case. Had petitioner not sought and obtained a reclassification of his retirement status to disability retirement, what he received from the Civil Service Retirement Fund would have been "retirement income" within the meaning of section 37(d)(2)(B). As a "pension or annuity," the tax treatment of his receipts would have been governed for tax purposes by section 72, and petitioner would have been entitled under section 72(d)(1) to recover tax free the amount of his contributions to the fund. But the reclassification of his retirement status subjected his receipts to tax treatment under section 105(a) as amounts received as a "health benefit." As such, petitioner's receipts were "amounts received as compensation" for services, paid to him for a period of absence from work due to a personal injury or sickness, and were not a "pension or annuity" within the section 37(g) definition of "earned income." Since petitioner's earned income exceeded the $1,524 limitation prescribed by section 37(d)(2)(B), petitioners are not entitled to the retirement income credit which they claim.

To reflect the foregoing,

*Decision will be entered for the respondent.*