**NEW YORK ATHLETIC SUPPLY CO., INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 76 Civ. 3337 (MEF).**

United States District Court, S. D. New York.

April 11, 1978.

Norman J. Mordkofsky, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., for United States; Frederick P. Schaffer, New York City, of counsel.

## MEMORANDUM

FRANKEL, District Judge.

This is an action for refund of withholding and Social Security taxes for the third quarter of 1971 paid under protest by the plaintiff. The United States has counterclaimed for taxes assessed but not paid for earlier periods extending back to 1965. The action is now before the court on the Government's motion for dismissal of the plaintiff's complaint for failure to state a

claim upon which relief can be granted, and for judgment on the pleadings on its counterclaim. This has been treated as a motion for summary judgment on the opposing claims, as was announced in the court's memorandum of November 1, 1977. Further submissions were received in response to the court's memorandum of December 8, 1977. The Government's motion is now ripe for decision and is granted in all respects.

## I.

The dispute grew out of acts of embezzlement by the taxpayer's accountant, one Robert Runyon, who diverted to his own use funds intended for payment of the taxpayer's employer's withholding and social security tax liabilities and failed to file the required federal tax returns as he was commissioned by the taxpayer to do. These defalcations took place over the period from 1965 through 1972, and the plaintiff was unaware of them as they occurred. It is undisputed that the I.R.S. had no actual knowledge of the plaintiff's failure to remit these taxes. In November of 1972, the plaintiff discovered that the taxes had gone unpaid, and reported this information to the I.R.S. It is agreed that plaintiff filed its withholding tax returns for the years 1965 through 1972 in two installments, in December 1972 and January 1973. The Commissioner then made assessments against the plaintiff for those years.

The taxpayer entered into an installment payment agreement with the I.R.S. in 1975. The taxpayer also asserts that an I.R.S. agent gave oral assurances that if the taxpayer complied with the terms of the payment agreement, no further enforcement of the assessments would be attempted. The Government disputes the making of any oral agreement not to sue, but argues in any event that it would not be bound by it. The written agreement, which was renewed in 1976, contained the following statement under the heading "Other Conditions or Information":

"PAYMENTS MADE UNDER PROTEST & ADVISEMENT.
COURT ACTION TO BE INITIATED.

PAYMENTS MUST BE APPLIED TO TAX PRINCIPLE [*sic*] ONLY—NO PAYMENT TO BE APPLIED TO INTEREST OR PENALTY."

These hand printed words were apparently inserted by the taxpayer. The taxpayer made the payments required under the agreement until the commencement of this action.

## II.

Plaintiff proceeds on the theory that an action for a refund is essentially a common law action for money had and received, and is therefore governed by general equitable principles. The specific equitable principles relied upon by plaintiff are laches, estoppel, and one styled "negligence." The sole authority cited in support of the asserted equitable nature of tax refund claims is *Stone v. White,* 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265 (1937), in which it was held that the United States could interpose a defense of equitable recoupment to bar an action for a refund by trustees where a change in interpretation of the relevant law shifted the tax liability from the trustees to the beneficiary, long after the trustees had paid the tax and the statute of limitations had run as against the beneficiary. However, *Stone v. White* has not been applied outside the special context of equitable recoupment and in no sense provides authority for the sweeping proposition asserted by plaintiff. Freewheeling invocation of equitable principles in tax cases has been authoritatively condemned. *United States v. California,* 332 U.S. 19, 39–40, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947); *Babcock & Wilcox Co. v. Pedrick,* 212 F.2d 645 (2d Cir. 1954), cert. denied, 348 U.S. 936, 75 S.Ct. 355, 99 L.Ed. 733 (1955).

■ In the present case the applicable statute unambiguously provides that when no return has been filed, an assessment may be made at any time. 26 U.S.C. § 6501(c)(3). There is no provision for mitigating circumstances such as the plaintiff would invoke.

■ The specific principles relied upon by the plaintiff are no more availing than its general argument. Laches—in this case the delay in assessing the tax from the time it was due—cannot provide a basis for affirmative relief. *Northern Pacific Ry. Co. v. United States,* 277 F.2d 615, 624 (10th Cir. 1960). Moreover, laches is not available against a party acting within an applicable statute of limitations. *United States v. Mack,* 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935). Since no returns were filed by the plaintiff when the taxes were due, the statute of limitations was the open-ended one of 26 U.S.C. § 6501(c)(3). Finally, laches cannot be invoked against the United States. *United States v. California, supra,* 332 U.S. at 39–40, 67 S.Ct. 1658; *United States v. Summerlin,* 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); *Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 82 L.Ed. 1224 (1938); *United States v. 93 Court Corp.,* 350 F.2d 386, 388–89 (2d Cir. 1965), cert. denied, 382 U.S. 984, 86 S.Ct. 560, 15 L.Ed.2d 473 (1966).

■ The attempt to resort to the doctrine of estoppel (based on the argument that the Government's failure to detect the nonpayment of taxes constituted an implicit representation that they were being paid) is similarly unsuccessful. Estoppel generally may not be invoked to bind the United States. *United States v. San Francisco,* 310 U.S. 16, 32, 60 S.Ct. 749, 84 L.Ed. 1050 (1940); *Utah Power & Light Co. v. United States,* 243 U.S. 389, 409, 37 S.Ct. 387, 61 L.Ed. 791 (1917). Although there has been some slight erosion in recent years of this formerly iron-clad rule, see, e. g., *Vestal v. Commissioner of Internal Revenue,* 80 U.S.App. D.C. 264, 267–69, 152 F.2d 132, 135–37 (1945); *Schuster v. Commissioner of Internal Revenue,* 312 F.2d 311, 317 (9th Cir. 1962); *Brandt v. Hickel,* 427 F.2d 53 (9th Cir. 1970); *United States v. Lazy FC Ranch,* 481 F.2d 985 (9th Cir. 1973), this development has been limited to well-defined situations not like the one presented here. And even this limited relaxation of the traditional position is largely a trend of the Court of Appeals for the Ninth Circuit which has not been followed by the Second Circuit. *Goldberg v. Weinberger,* 546 F.2d 477 (2d Cir. 1976), cert. denied, 431 U.S. 937, 97 S.Ct. 2648, 53 L.Ed.2d 255 (1977).

In *Tonkonogy v. United States,* 417 F.Supp. 78, 79 (S.D.N.Y.1976), decided prior to *Goldberg v. Weinberger,* Judge Owen synthesized the learning of the Ninth Circuit cases in holding that in order to invoke estoppel against the I.R.S., there must be shown:

(1) a misrepresentation by a representative of the United States acting within the scope of his duties;

(2) the absence of contrary knowledge by the taxpayer, in circumstances where the taxpayer may reasonably act in reliance upon the representation;

(3) actual reliance;

(4) detriment; and

(5) a factual context in which the denial of equitable relief would be unconscionable.

■ Under those criteria, accepted herein, there can be no estoppel against the Government in this case. It is agreed that there was no affirmative misrepresentation by the Government. Moreover, the plaintiff has not suggested any authority for the improbable idea that the I.R.S. should bear a duty to uncover, and alert taxpayers to, delinquencies in their taxes.* Duty being

---

* There is a dispute between the parties as to whether the I.R.S. had a computer system capable of cross-checking employer withholding tax returns against employees' returns which indicated withholding. The Government had submitted an affidavit denying the existence of such a capability, at the time in issue. The plaintiff responded with an affidavit which reports second-hand the suspicions of individuals other than the affiant that such a system existed. Setting aside the question of whether this is sufficient to create a genuine issue of fact, any uncertainty on this subject is a matter of no consequence. This is not a material fact even if it is disputed, for the court concludes that even if the system existed, a duty would not arise for the I.R.S. to use this capability to scrutinize all tax returns for the benefit of employers in the fashion which is suggested by the plaintiff.

472

absent, there was no misrepresentation by silence. In no event could it be deemed reasonable for the taxpayer to rely on the I.R.S. to insure the fidelity of the taxpayer's own employees. No detriment proximately traceable to the I.R.S. is alleged, for the proximate cause of the plaintiff's injury was Runyon's embezzlement, not I.R.S. oversight. Finally, allowing the Government to retain or collect the unpaid taxes is by no means unconscionable.

■ The last specific basis for relief urged by the plaintiff is described in its complaint as "negligence." Plaintiff cannot recover on this theory. The Federal Tort Claim Act excludes from its waiver of immunity suits "arising in respect of any assessment or collection of tax," 28 U.S.C. § 2680, and that would block plaintiff's theory as a claim in tort. *Broadway Open Air Theatre v. United States,* 208 F.2d 257 (4th Cir. 1953). The plaintiff fares no better when the element of alleged negligence is imported into the standard action for a refund. The alleged negligence does not amount to a claim that the taxes were illegally assessed or collected under 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7422. Moreover, even if negligence could provide the basis for a refund on these grounds, the absence of a legal duty to detect delinquencies such as the plaintiff's confronts the plaintiff with an insurmountable obstacle.

In sum, there being no merit to plaintiff's theories of recovery, the Government is entitled to summary judgment on the plaintiff's claim.

### III.

■ In opposing the Government's motion for judgment on the counterclaim, the plaintiff repeats the arguments made on its own claim. These arguments must be rejected for the reasons stated above. In addition, plaintiff points to the alleged oral promise not to sue. Unlikely as any such promise might seem, given the pains the plaintiff took to protect itself by listing terms in the "Conditions" section of the installment payment agreement and the fact that the agreement was renewed with

identical terms one year after it was initially made, the court need not reach this possible factual question. Even if the oral agreement is assumed to have been made, the Government cannot be estopped from pursuing its counterclaim. Reliance by the plaintiff was not reasonable because of the failure to include the alleged promise among the meticulously listed conditions of the agreement. Detriment is also lacking, for the taxpayer did not increase its exposure by entering into the agreement. Finally, the one-way revocability the taxpayer would have the court find in the installment payment agreement demonstrates that it is not unconscionable for the Government to enforce its rights in full in this counterclaim. Summary judgment will be granted to the Government on its counterclaim.

Settle a final judgment embodying the foregoing determinations.