BERNARD L. MAGNUSSEN AND SANDRA C. MAGNUSSEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Magnussen v. Commissioner
Docket No. 39661-85.
United States Tax Court
T.C. Memo 1987-315; 1987 Tax Ct. Memo LEXIS 315; 53 T.C.M. (CCH) 1233; T.C.M. (RIA) 87315; June 25, 1987. John A. Runte, for the petitioners. Debra Estrem, for the respondent. PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: Respondent determined deficiencies in petitioners' 1980 and 1982 Federal income tax in the amounts of $71,542 and $1,975, respectively. After concessions, including a complete concession by petitioners for the 1982 deficiency, the sole issue is when, if at all, a revocation of election to have Magnussen Chevrolet Corporation ("Magnussen Chevrolet") taxed under Subchapter S of the Internal Revenue Code became effective. FINDINGS OF FACT Petitioners resided in Atherton, Calif., at the time they filed their petition. They timely filed their joint 1980 Federal income tax return with the Internal Revenue Service Center in Fresno, Calif.
During 1980, petitioner [1] was the president and sole shareholder of Magnussen Chevrolet. Prior to that year, Magnussen Chevrolet had on file with respondent a valid election to be taxed under *317 Subchapter S of chapter 1 of Subtitle A of the Internal Revenue Code of 1954. In January of 1980, however, petitioner directed his attorney to send respondent a letter revoking the subchapter S election. On January 25, 1980, petitioner's attorney mailed a Statement of Revocation of Election Under Section 1372(a) For Magnussen Chevrolet. [2] This document was mailed from petitioner's lawyer's office, not a post office. The covering letter in evidence does not indicate that it was to be sent via any particular mailing method. A certified mail receipt is attached to the covering letter, but it is not stamped by any postal official. Petitioner's attorney testified that his office policy "is to either mail them and keep the certificate attached, that is that little stub, attached to the file or in some instances to walk it to the post office and get it stamped. And it's obvious to me that what we did was simply mail and attach the stub awaiting the green receipt to be returned by the post office." *318 The January 25 letter was sent to: Internal Revenue Service, 5045 Butler Avenue, Fresno, California 93707. The proper zip code for the Fresno Service Center is 93888. The letter was never returned to the sender. No return receipt was received either. On January 30, 1980, petitioners' attorney, having realized that the prior letter had an erroneous zip code, mailed a photocopy of the same revocation to: Internal Revenue Service, Fresno, California 93888, the correct address. The copy of the January 30 covering letter in evidence notes that this revocation was to be mailed "Certified, Return Receipt Requested." A certified mail receipt stamped by the Palo Alto, Calif. post office on January 30, 1980 is also in evidence. On March 24, 1980, respondent sent Magnussen Chevrolet, in care of petitioner's attorney, the following letter: Dear Taxpayer: We received your correspondence concerning your revocation of your Subchapter S Election. We are returning your statement because we need additional information: We need original signatures. Please make the necessary correction(s) and resubmit your original statement of revocation within the next few days. Thank you for your *319 cooperation. Sincerely, /s/ W. R. Vidmar W. R. Vidmar, Chief, Correspondence Section Upon receipt of this letter, petitioner reconsidered his decision to change Magnussen Chevrolet's tax status, and directed his attorney not to resubmit any statement of revocation. Petitioner received, at Magnussen Chevrolet's business address, a letter dated April 29, 1980, from the same individual at the Fresno Service Center who signed the March 24 letter. This letter, however, was not signed. It read as follows: Dear Taxpayer: Your revocation of your election to be treated as a small business corporation is effective beginning with the year Jan 1, 1980. Thank you for your cooperation. Sincerely yours, W R Vidmar, Chief, Correspondence Section Petitioner disregarded this letter because, based on the March 24 letter, he believed that the revocation requirements had not been met. He planned his affairs based on his belief that Magnussen Chevrolet was to be taxed under Subchapter S. He could have materially modified his 1980 taxable income to compensate for omission of the Magnussen Chevrolet loss by reducing his salaries and consulting fees and increasing subchapter S losses *320 from another corporation in which he owned an interest. When a revocation such as the one at issue is sent to the respondent's Service Center, it is received in the mailroom. It is normally processed within two to three weeks, but with backlogs at the Service Center, a ten week lapse before processing is not unusual. We find that the January 25 revocation was received by respondent in due course, and processed at some time between March 24, 1980 and April 29, 1980. For the 1980 tax year, Magnussen Chevrolet filed with the Fresno Service Center a Form 1120S (U.S. Small Business Corporation Income Tax Return). This return was not processed and Magnussen was informed by letter dated March 29, 1981, that respondent's "records show your election to be treated as a small business corporation for income tax purposes was revoked." Petitioners claimed a net loss from Magnussen Chevrolet on their individual income tax return for 1980 in the amount of $241,399. OPINION Section 1371(a) [3] provides that under certain circumstances a small business corporation may elect not to be subject to normal income taxes and surtaxes. [4] Under certain circumstances, such election may be revoked *321 at the option of the corporation. Section 1372(e)(2). [5] If this revocation is made before the end of the first month of the corporation's taxable year, it is effective for that taxable year and for all succeeding taxable years. Section 1372(e)(2)(A). *322 The Secretary has statutory authority to prescribe the manner of making the revocation. Section 1372(e)(2). He has done so. See sections 1.1372-4(b)(2), [6] and 1.1372-4(c), [7] Income Tax Regs. Substantial, and not literal, compliance with these provisions is all that is required. Hoffman v. Commissioner,47 T.C. 218, 236-237 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968). *323 The issue here is when, if at all, Magnussen Chevrolet made an effective revocation. Petitioner argues that neither the January 25 nor the January 30 revocation was effective. Petitioner argues alternatively that respondent is estopped from asserting the ineffectiveness of either revocation. Respondent argues that the January 25 revocation was effective, that petitioners have failed to show the January 30 revocation was ineffective, and that estoppel does not apply here. Petitioner contends with respect to the January 25 letter that certain indicia that the letter never arrived, coupled with lack of a proper zip code, must yield the conclusion that the revocation was ineffective. We reject this argument. Section 7502 provides that if a document is delivered to respondent after the date on which it is due, its timely mailing is its timely "filing." Petitioner argues that the evidence shows the January 25 letter was never delivered. Drawing the most reasonable inferences from the facts, we have found that the January 25 letter did in fact arrive at the Fresno Service Center. Thus, to find that no effective revocation was filed, we would have to hold that the timely filed revocation *324 is ineffective because it was sent with an incorrect zip code. We have found no case in which an assertion of a lack of proper mailing was based solely on an incorrect zip code. Rather, proper mailing has been shown despite an incorrect zip code. See, e.g., Price v. Commissioner,76 T.C. 389 (1981). The illogic of the first proposition dissuades us from setting the precedent petitioner seeks. We turn, then, to his estoppel argument. While the doctrine of estoppel is applied to the Government and its officials with great caution, in proper circumstances it does apply. Simmons v. United States,308 F.2d 938 (5th Cir. 1962); Vestal v. Commissioner,152 F.2d 132 (D.C. Cir. 1945), revg. 4 T.C. 558 (1945). Petitioner here relies exclusively on Tonkogony v. United States,417 F. Supp. 78 (S.D.N.Y. 1976), and its formulation of the elements necessary to show estoppel. Tonkogony is distinguishable on the facts, and our cases have used somewhat different elements of estoppel than are found there. The elements of equitable estoppel are: (1) Conduct constituting a representation of *325 material fact; (2) Actual or imputed knowledge of such fact by the representor; (3) Ignorance of the fact by the representee; (4) Actual or imputed expectation by the representor that the representee will act in reliance upon the representation; (5) Actual reliance thereon; and (6) Detriment on the part of the representee. Consolidated Freightways v. Commissioner,74 T.C. 768, 791 n. 8 (1980), affd. and revd. on other issues 708 F.2d 1385 (9th Cir. 1983); Graff v. Commissioner,74 T.C. 743, 761 (1980), affd. per curiam 673 F.2d 784 (5th Cir. 1982). [8]
In this case, petitioner's argument turns on whether respondent's March 24 letter represented to Magnussen Chevrolet that respondent would not deem to be effective either the January 25 or the January 30 revocation. Petitioner's argument must fail. First, the March 24 letter made no comment on the January 25 revocation. We believe this is because the January 25 revocation was en route to being processed when the March 24 letter was sent, and that the letters crossed. Second, the *326 March 24 letter nowhere states that either revocation was rejected or ineffective. The parties argue over when an original signature is required on a revocation. We need not decide that issue, however. The issue here is the applicability of estoppel, and its resolution turns simply on whether petitioner was told that Magnussen Chevrolet's revocation was rejected or ineffective, not on whether the revocation was rejected or ineffective. Third, the April 29 letter should have put petitioner on notice that his revocation became effective. His disregard of the letter cuts deeply against his equitable estoppel argument. For these reasons we reject petitioner's equitable estoppel argument. Petitioner's revocation, mailed before the end of the first month of 1980, is effective to revoke Magnussen's subchapter S status for the 1980 taxable year. Decision will be entered for respondent.
Footnotes
1. For convenience, Bernard L. Magnussen will hereinafter be referred to as petitioner.↩
2. Except for the mailing question, petitioner does not argue that this document was not sufficient on its face to accomplish the task for which it was drafted.↩
3. All section references are to the Internal Revenue Code in effect during the year in issue and all Rule references are to the Tax Court Rules of Practice and Procedure. ↩
4. Sec. 1371 was redesignated as sec. 1362 by sec. 2, Pub. L. 97-354 (1982), 96 Stat. 1669. ↩
5. (2) Revocation. -- An election under subsection (a) made by a small business corporation may be revoked by it for any taxable year of the corporation after the first taxable year for which the election is effective. An election may be revoked only if all persons who are shareholders in the corporation on the day on which the revocation is made consent to the revocation. A revocation under this paragraph shall be effective -- (A) for the taxable year in which made, if made before the close of the first month of such taxable year, (B) for the taxable year following the taxable year in which made, if made after the close of such first month, and for all succeeding taxable years of the corporation. Such revocation shall be made in such manner as the Secretary shall prescribe by regulations.↩
6. (2) Revocation.↩ An election under section 1372(a) may be revoked by the corporation for any taxable year of the corporation after the first taxable year for which the election is effective. A revocation can be made only with the consent of all the persons who are shareholders at the beginning of the day of revocation. Such revocation shall be made by the corporation by filing a statement that the corporation revokes the election made under section 1372(a), which statement shall indicate the first taxable year of the corporation for which the revocation is intended to be effective. The statement shall be signed by any person authorized to sign the return of the corporation under section 6037 and shall be filed with the internal revenue officer with whom the election was filed. In addition, there shall be attached to the statement of revocation a statement of consent, signed by each person who is a shareholder of the corporation at the beginning of the day on which such statement of revocation is filed, in which each such shareholder consents to the revocation by the corporation of the election under section 1372(a). For the time within which a revocation must be made to be effective for a particular taxable year of the corporation, see paragraph (c) of this section. 7. (c) Years affected by termination.↩ * * * Generally, a termination by revocation described in paragraph (b)(2) of this section is effective for the taxable year in which it is made and for all subsequent taxable years if it is made during the first month of that year. However, a termination by revocation cannot be made effective for the first taxable year of the corporation for which the election is made. If the revocation is not made during the first month of a taxable year, it is effective for the taxable year following the year in which it is made, and for all subsequent years.
8. See also Turney v. Commissioner,T.C. Memo. 1987-74↩.