MIDWEST GENERATOR COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Midwest Generator Co. v. Commissioner
Docket Nos. 12064-81; 27843-86.
United States Tax Court
T.C. Memo 1988-50; 1988 Tax Ct. Memo LEXIS 49; 55 T.C.M. (CCH) 90; T.C.M. (RIA) 88050; February 17, 1988. Shelly B. Kulwin, for the petitioner. Denis J. Conlon and G. Roger Markley, for the respondent. CLAPP
MEMORANDUM FINDINGS OF FACT AND OPINION CLAPP, Judge: Respondent determined deficiencies in petitioner's corporate income tax and additions to tax under section 6653(b) [1] as follows: Additions to tax
Year
Deficiency
under section 6653(b)
1974
$  3,846.66
$  1,923.33
1975
$  8,349.28
$  4,174.64
1976
$ 21,150,81
$ 10,575.41
This matter is before us on petitioner's motion to suppress evidence ad shift the burden of going forward. *50 No hearing was held on this matter. However, the parties stipulated that the facts which would be adduced at a hearing include the facts set forth in the Memorandum Opinion issued by Judge Prentice H. Marshall in United States v. Wolf,601 F. Supp. 435 (N.D. Ill. 1984). At the time of filing the petition herein, petitioner was a corporation organized under the law of Illinois with its principal place of business in Chicago, Illinois. Factual Background
In 1977, Revenue Canada began a criminal tax investigation of a Canadian company, Wilson Auto Electric ("Wilson"). Pursuant to that investigation, agents from Revenue Canada decided to interview representatives of American companies involved in an alleged kickback scheme, one of whom was Gilbert Wolf ("Wolf"), the sole shareholder of petitioner corporation. On December 6, 1977, Revenue Canada forwarded to the Office of International Affairs of the Internal Revenue Service a "collateral request" for assistance in arranging an interview with Wolf for the purpose of obtaining evidence from petitioner which would be useful in their investigation of Wilson. The request was made pursuant to Article XXI of the *51 Canadian-United States Tax Convention of 1942, 56 Stat. 1399 ("the Convention"). [2] Attached to the request was a memorandum prepared by a Canadian agent detailing the alleged kickback arrangement as well as copies of invoices and checks allegedly involved in the scheme. The request was assigned to Internal Revenue Service Special Agent Debra *52 Kerwin. Kerwin arranged a meeting between two Canadian agents and Wolf's attorney, Gerald Risner, on January 23, 1978. In the course of setting up this meeting, Kerwin learned that on September 19, 1977, an Internal Revenue Service computer has selected petitioner's 1976 tax return for a civil audit. Kerwin was present at the meeting between the Canadian agents and Risner. Risner stated that he was concerned that Wolf's statements might be incriminatory and that the information would be turned over to the Internal Revenue Service. Accordingly, Risner requested that the Canadian agents disclose specifics of their proposed questions to him so that he could advise Wolf whether to submit to an interview. One of the Canadian agents responded that it was his practice to disclose such information only to the subject of the investigation. The agent then asked Internal Revenue Service Special Agent Kerwin to leave the room, and Kerwin complied with this request. The Canadian agent then falsely stated to Risner that the Internal Revenue Service did not yet have any information concerning petitioner's dealings with Wilson and that if Wolf cooperated in explaining the transactions with *53 Wilson, the information given to the Canadians would not be given to the Internal Revenue Service. Conversely, the Canadian agents stated that if Wolf did not cooperate, the information Revenue Canada had would be turned over to the Internal Revenue Service. However, the Canadian agents knew that the Internal Revenue Service already possessed certain information which was contained in the memorandum attached to the collateral request. The following day Wolf agreed to explain certain transactions between petitioner corporation and Wilson. Kerwin was not present at that meeting. Wolf answered all questions and provided all information requested by the Canadians. Although there is no evidence that Wolf's responses were untrue, the Revenue Canada agents were dissatisfied with Wolf's answers. Thereupon they broadened their inquiry and requested Wolf's personal financial records. After some discussion, Wolf declined to provide the newly requested records, and Revenue Canada's investigation in the United States was terminated. Thereafter, the Internal Revenue Service audit of petitioner escalated to a fraud investigation of Wolf and petitioner. The Internal Revenue Service fraud *54 investigators made a collateral request for information from Revenue Canada under the Tax Convention of 1942. In response, Canada provided the Internal Revenue Service with all of the information it had concerning Wolf and petitioner, including Wolf's statements made in January 1978. In 1982, Wolf was indicted for allegedly filing false personal and corporate income tax returns for the years 1975 and 1976. Prior to the criminal trial, Wolf moved to suppress evidence on the grounds that the prosecution had obtained its information in violation of Wolf's rights under the Fourth and Fifth Amendments of the United States Constitution, as well as Article XXI of the Canadian-United States Tax Convention of 1942. The District Court granted Wolf's motion. United States v. Wolf,601 F. Supp. 435 (N.D. Ill. 1984). The District Court's conclusion was based upon its finding that there was an agreement between Wolf and Revenue Canada which Revenue Canada breached. The court further concluded that the level of participation by the Internal Revenue Service with Revenue Canada was sufficient to cause the United States to bear the consequences of that breach. The court based *55 its grant of Wolf's motion on the fifth amendment, stating: It is easy to conclude, that the statements defendant made to the Canadian agents must be suppressed. Statements made in reliance upon a promise are considered involuntary and must be suppressed under the fifth amendment. See Brady v. United States,397 U.S. 742, 753 (1970); Bram v. United States,168 U.S. 532, 542-43 (1987). [Fn. ref. omitted.] [United States v. Wolf, supra at 441.442.]
The government did not appeal that decision. OPINION In support of its motion to suppress here, petitioner asserts a variety of arguments. First, petitioner argues that the doctrines of res judicata and collateral estoppel preclude respondent from relitigating the District Court's suppression order. Second, petitioner claims that the evidence must be suppressed because it was obtained in violation of petitioner's rights under the Fourth Amendment of the United States Constitution. Finally, petitioner asserts that the evidence was obtained in violation of its rights under Article XXI of the United States-Canada Tax Convention in 1942. The general rule of res judicata applies *56 to tax proceedings involving the same claim and the same tax year. The judgment puts an end to the cause of action which cannot again be brought into litigation between the parties. Commissioner v. Sunnen,333 U.S. 591, 597 (1948). Since the cause of action determined at the District Court was a criminal one involving different parties, it is distinct from the civil cause of action at issue here. Accordingly, the doctrine of res judicata does not operate here. Collateral estoppel prevents relitigation of any issue of fact or law that is actually litigated and necessarily determined by a valid and final judgment. Montana v. United States,440 U.S. 147, 153 (1979); see 1 Restatement, Judgments 2d, sec. 27 (1982). Its purpose is to avoid repetitious litigation of issues between the same parties or their parties. See Jaggard v. Commissioner,76 T.C. 222, 223 (1981). However, the doctrine "must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules *57 remain unchanged." Commissioner v. Sunnen, supra at 599-600. Additionally, differing standards of proof are involved in criminal and civil cases, and, accordingly, a favorable decision for a taxpayer in a criminal case, such as acquittal, has no binding effect in a civil fraud proceeding. See Helvering v. Mitchell,303 U.S. 391 (1938); see Lydon v. Commissioner,351 F.2d 539, 545 (7th Cir. 1965), affg. a Memorandum Opinion of this Court. Because of numerous differences between the matter raised here and the issues decided by the District Court, we must conclude that the doctrine of collateral estoppel does not operate in this instance. We find significant differences in the controlling facts and applicable legal rules. Among the most notable of these is the distinction between the moving party in the District Court proceeding, the individual Gilbert Wolf, and the moving party here, petitioner corporation Midwest Generator Company. Also of crucial importance is the difference between a criminal and civil proceeding. The District Court decision determined at the rights of an individual in a criminal action. Here, however, we *58 are concerned with the rights of a corporation in a civil tax action, and the applicable legal rules vary significantly. For example, a taxpayer's ability to assert the constitutional privileges against self-incrimination in a civil tax case is somewhat circumscribed. See McCoy v. Commissioner,76 T.C. 1027, 1029 (1981), affd. 696 F.2d 1234 (9th Cir. 1983). Furthermore, because that privilege is essentially a personal one applying only to natural persons, a corporation is not entitled to assert it. United States v. White,322 U.S. 694, 699 (1944). [3] For these reasons, we must conclude that it would be inappropriate to allow petitioner to assert the doctrine of collateral estoppel in this matter. Next we address petitioner's argument that the evidence at issue here must be suppressed because it was obtained in violation of petitioner's fourth amendment rights. We regard this argument as ill-chosen because we can find no search or seizure which took place which would give rise to a fourth amendment claim. Wolf merely gave oral responses to questions posed by *59 Revenue Canada agent. The record provides no evidence that any premises were searched or documents seized. As support for his fourth amendment argument, petitioner asserts that the decision of the District Court was based on its finding that Wolf's fourth, as well as his fifth, amendment rights had been violated. We do not so reach the District Court opinion. Although the opinion reviewed a number of cases involving searches and seizures, it did so within the context of its analysis of whether acts of foreign agents could be attributed to Federal officials. However, the decision to suppress the evidence was based on the fifth amendment. This is revealed clearly in the portion of the opinion quoted above. Since we find no search or seizure took place, we need not further consider petitioner's claims based on the fourth amendment. Finally, we address petitioner's argument that the evidence was obtained in violation of its rights under Article XXI of the United States-Canada Tax Convention of 1942. The relevant portion of Article XXI provides that if the Commissioner deems it necessary to secure the cooperation of the Minister, the Minister may, upon request, furnish the Commissioner *60 such information as the Minister is entitled to obtain under the revenue laws of Canada. Petitioner has failed to provide any evidence that the Commissioner obtained information to which the Minister would not be entitled under the revenue laws of Canada. See United States v. Phillips,479 F. Supp. 423 (M.D. Fla. 1979). Accordingly, we see no basis for a finding that petitioner's rights under the Convention were violated. For the foregoing reasons, petitioner's motion to suppress is denied. An appropriate order will be issued.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue. Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. Article XXI provides: 1. If the Minister [of National Revenue of Canada] in the determination of the income tax liability of any person under any of the revenue laws of Canada deems it necessary to secure the cooperation of the Commissioner [of the IRS], the Commissioner may, upon request, furnish the Minister such information bearing upon the matters as the Commissioner is entitled to obtain under the revenue laws of the United States of America. 2. If the Commissioner in the determination of the income tax liability of any person under any of the revenue laws of the United States of America deems it necessary to secure the cooperation of the Minister, the Minister may, upon request, furnish the Commissioner such information bearing upon the matter as the Minister is entitled to obtain under the revenue laws of Canada. ↩
3. Petitioner concedes this point in its reply brief (p. 7). ↩