LLOYD BAGNELL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bagnell v. Commissioner
Docket No. 13707-92
United States Tax Court
T.C. Memo 1993-378; 1993 Tax Ct. Memo LEXIS 396; 66 T.C.M. (CCH) 463; August 23, 1993, Filed *396 Decision will be entered for respondent with respect to the income tax deficiency. Decision will be entered for petitioner with respect to the additions to tax. Lloyd Bagnell, pro se. For respondent: Robin Herrell. PATE
PATE
MEMORANDUM FINDINGS OF FACT AND OPINION PATE, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined the following deficiencies in and additions to petitioner's 1985, 1986, 1987, and 1988 Federal income taxes: Additions to Tax - Sections Year
Deficiency
6651(a)
6653(a)(1) [1]
6653(a)(2)
1985
$ 898.00
$ 224.50
$ 44.90
[2]
1986
872.00
218.00
43.60
[2]
1987
787.00
196.75
39.35
[2]
1988
844.00
211.00
42.20
N/A
*397 At trial, respondent conceded all of the additions to tax shown on the notice of deficiency. Consequently, the sole issue for our decision is whether petitioner may exclude from his gross income civil service disability benefits he received during 1985, 1986, 1987, and 1988. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Lloyd Bagnell resided in Glenville, West Virginia, at the time he filed his petition. Petitioner reviewed social security cases for the Department of Health, Education and Welfare (hereinafter HEW) in Baltimore, Maryland, from 1959 until 1960, and then again from 1962 through 1966. While so employed, he made payments to the Civil Service Retirement and Disability Fund (hereinafter the retirement fund) totaling $ 1,403. In 1966, at the age of 39, petitioner became totally disabled, retired, and began receiving Civil Service disability benefits (hereinafter disability benefits). Petitioner has continuously collected disability benefits and has not been employed since he retired. Petitioner collected disability benefits totaling $ 10,044, $ 10,044, $ 10,183, and $ 10,584, during 1985, 1986, 1987, and 1988, respectively. However, he *398 did not file Federal income tax returns for any of those years because he believes that his disability benefits are excludable from his gross income, and, therefore, he did not have sufficient gross income in any of those years to require the filing of a return. Respondent determined that petitioner should have filed income tax returns for all those years reporting his disability benefits as gross income thereon. Petitioner contends that his disability benefits are excludable from gross income. He asserts that: (1) He alone contributed to the retirement fund; (2) his disability benefits were tax-exempt when he retired, and any subsequent changes in the law apply only to those who retired after the effective date of the changes; (3) the Internal Revenue Service (hereinafter the IRS) asked him to produce a written diagnosis of his disability, thereby violating his right to privacy and the prohibition against unreasonable searches and seizures; and (4) the IRS told him his disability benefits were excludable from his gross income, and the IRS is bound by that advice. OPINION Respondent maintains that petitioner must include the disability benefits he received in gross income under *399 section 61. Section 61 provides that a taxpayer's gross income includes "all income from whatever source derived" unless excluded by another section of the Code. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 430 (1955). Section 61 specifically lists "pensions" as a source of gross income. Sec. 61(a)(11); sec. 1.61-11, Income Tax Regs.
Petitioner has not directed our attention to any statute applicable to the years in issue which excludes his disability benefits from gross income. Moreover, we know of no such exclusion. Although sections 104 and 105 exclude from gross income certain payments received on account of injuries or sickness, none of those provisions apply to the facts in this case. Brown v. Commissioner, T.C. Memo. 1989-89. Accordingly, we find that petitioner's disability benefits are includable in his gross income. Haar v. Commissioner, 78 T.C. 864 (1982), affd. per curiam 709 F.2d 1206 (8th Cir. 1983). Nevertheless, petitioner argues that only he contributed to the retirement fund, and that all of his disability benefits therefore are *400 excludable from gross income. He relies on an IRS Publication which states: "If the plan says that you must pay a specific part of the cost of your disability pension, any amounts you receive that are due to your payments to the disability pension are not taxed. You do not report them on your return." This statement apparently refers to section 104(a)(3), which provides that amounts received through accident or health insurance for personal injury or sickness are excludable from an employee's gross income to the extent that the employee contributed to the premium payments. It is true that petitioner made contributions to the retirement fund totaling $ 1,403. However, in addition to the contributions deducted from his salary, the government contributed an equal sum. See Hogan v. United States, 513 F.2d 170 (6th Cir. 1975); Act of May 22, 1922, ch. 194, 41 Stat. 614, (superseded by 5 U.S.C. sec. 8334(a) (1966)); see also Executive Departments-Officers-Employees, 5 U.S.C. sec. 2254(a) (1958). Moreover, the fact that petitioner contributed $ 1,403 to the retirement fund does not *401 establish that any part of that amount was paid for accident or health insurance. Rather, in the case of a retirement plan to which an employee is required to contribute, it is presumed that the accident and health benefits are funded by employer contributions. Chosiad v. Commissioner, T.C. Memo. 1980-408. Thus, with a contributing plan which provides both disability and retirement benefits, it is presumed that the disability benefits are attributable to employer contributions unless the plan expressly provides otherwise. Id. Because the retirement fund makes no such express provision, and petitioner has not presented any evidence of the inner workings of the fund to rebut such presumption, no portion of his benefits are excludable. See Hatton v. Commissioner, T.C. Memo. 1983-28, n.5. Next, petitioner argues that, because his disability benefits were excludable from gross income during 1966, he is not subject to any subsequent changes in the tax law. In other words, he maintains that changes in the applicable tax law "can apply only to those who retired after the effective date of the Act," and "To apply these *402 later changes is to violate the provision that no law shall be made impairing the obligations of contracts." We do not agree. Prior to 1976, section 105(d) excluded from gross income disability benefits of up to $ 100 per week. In the Tax Reform Act of 1976, Pub. L. 94-455, sec. 505(a), 90 Stat. 1520, 1566, Congress narrowed this exclusion to make it available only if the taxpayer had not yet attained age 65, was totally and permanently disabled, and met certain other requirements. See French v. Commissioner, T.C. Memo. 1991-196. However, the exclusion contained in section 105(d) was repealed in its entirety in 1983 by section 122(b) of the Social Security Amendments of 1983, Pub. L. 98-21, 97 Stat. 6587. Petitioner argues that he may exclude his disability benefits because section 105(d) was not repealed until 1983 and only taxpayers who retire after 1983 are deprived of the exclusion. However, each taxable year is governed by the tax law applicable to that particular year, and changes in tax laws from year to year are not only typical, but also inevitable, expected, and lawful. Picchione v. Commissioner, 440 F.2d 170, 173 (1st Cir. 1971), *403 affg. 54 T.C. 1490 (1970). In fact, in Pearson v. Commissioner, 76 T.C. 701, 705 (1981), we explicitly found that Congress intended the 1976 amendments to section 105(d) to apply to all taxable years after the effective date of the change "regardless of when the person retired." See also Haye v. Commissioner, T.C. Memo. 1983-463. Clearly then, after section 105(d) was repealed, the exclusion was no longer available to petitioner. Nevertheless, petitioner argues that he entered into an employment contract with the government which provided that disability payments were nontaxable and such contract cannot be later amended. However, petitioner never produced any "contract" with such a provision. Rather, the record indicates that it was the applicable income tax law at the time he retired which allowed the exclusion. This law was later modified (in 1976) and still later repealed (in 1983). Therefore, no exclusion was in effect in the years 1985 through 1989 and, accordingly, none of petitioner's disability benefits are excludable. As we explained in DeMartino v. Commissioner, 88 T.C. 583, 587 (1987), *404 affd. 862 F.2d 400 (2d Cir. 1988), affd. without published opinion sub nom. McDonnell v. Commissioner, 862 F.2d 308 (3d Cir. 1988): taxation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract, but instead, it is a way of apportioning the cost of Government among those who enjoy its benefits and who must bear the resulting burdens. * * *
See Furlong v. Commissioner, T.C. Memo. 1993-191. In other words, Congress has the power to change the tax laws regardless of the economic impact of such changes on particular financial transactions. Petitioner also complains that respondent's requirement that "in order to receive the disability credit, a disabled person * * * submit a doctor's certificate stating the diagnosis" violates his "right to privacy and the constitutional prohibition against unreasonable search and seizure". We are not exactly sure what doctor's certificate petitioner is alluding to as we have no such certificate in evidence. Moreover, we do not know whether petitioner is complaining "in general" or whether the IRS actually asked *405 him for certain information. In any event, there is no evidence that petitioner's home or person was searched by the IRS. Without evidence of such a search, no issue arises as to its reasonableness under the Fourth Amendment. Midwest Generator Co. v. Commissioner, T.C. Memo. 1988-50. Rather, it appears that the act complained of by petitioner was a request by the IRS that he voluntarily produce a doctor's certificate to prove that he was disabled. [2] Yet, we have held that the IRS is not prohibited from asking taxpayers to provide documents to substantiate their claims for deductions, exclusions, and credits, and that if the taxpayer fails to produce such documents the IRS may disallow the questioned items. Roberts v. Commissioner, 62 T.C. 834, 836 (1974). Further, requiring taxpayers, who institute civil proceedings to protest deficiencies, to produce records to substantiate their claims also does not constitute an invasion of privacy or unlawful search or seizure. Edwards v. Commissioner, 680 F.2d 1268, 1270 (9th Cir. 1982); Ebert v. Commissioner, T.C. Memo. 1991-629, *406 affd. without published opinion 986 F.2d 1427 (10th Cir. 1993). Finally, petitioner argues that, because the IRS told him that his disability benefits were excludable from his gross income, the IRS is bound by such advice. However, even if petitioner proved that he received such advice for the years in issue (which he has not proven), in general, incorrect advice by IRS personnel does not preclude the IRS from later maintaining a correct position. Darling v. Commissioner, 49 F.2d 111, 113 (4th Cir. 1931), affg. 19 B.T.A. 337 (1930); Fortugno v. Commissioner, 41 T.C. 316, 323-324 (1963), affd. 353 F.2d 429 (3d Cir. 1965). *407 In a case almost identical to this one, Turney v. Commissioner, T.C. Memo. 1987-74, the taxpayer complained that the IRS incorrectly advised him as to the tax treatment accorded his disability benefits. We held that the IRS was not estopped thereby from determining a deficiency in the taxpayer's income based on his unreported disability benefits. For the reasons expressed in that case, we hold that respondent is not estopped from asserting his position here. Based on the foregoing, Decision will be entered for respondent with respect to the income tax deficiency. Decision will be entered for petitioner with respect to the additions to tax. Footnotes
1. All section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. The additions to tax for negligence for taxable years 1986 and 1987 are computed under sec. 6653(a)(1)(A).↩
2. 50% of the interest due on the deficiency attributable to negligence. The interest for 1986 and 1987 is computed under sec. 6653(a)(1)(B).↩
2. We presume that this request was made with regard to years prior to those in issue when sec. 105(d) provided a limited exclusion for disability benefits. We discuss petitioner's argument here only because he raised it with respect to the years in issue.↩